UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
EASTERN DIVISION
(at Ashland)

| | | |
|---|---|---|
| DONALD CHANDOS RATLIFF, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 0: 13-084-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Donald Chandos Ratliff ("Ratliff" or "the Claimant") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 10, 11] Ratliff argues that the administrative law judge ("ALJ") assigned to his case erred in finding that he is not entitled to a period of disability and Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). He seeks reversal of the ALJ's decision and remand for an award of benefits. However, the Commissioner contends that the ALJ's decision is supported by substantial evidence, was decided by proper legal standards, and should be affirmed.

For the reasons discussed below, the Court finds that remand for further proceedings is necessary. Therefore, the Court will grant partial relief to Ratliff and deny the Commissioner's motion.

**I.**

On July 7, 2010, Ratliff applied for a period of disability and DIB under Title II of the Act. [*See* Administrative Transcript, "Tr.," at p. 13, 161-62.] He alleged a disability beginning February 23, 2009. Ratliff's claims were denied initially and upon reconsideration. Ratliff, along with attorney William Grover Arnett and impartial vocational expert ("VE") Leah P. Salyers, appeared before ALJ Jerry Meade, on February 8, 2012, for an administrative hearing. In a decision dated April 5, 2012, ALJ Meade found that Ratliff was not disabled under sections 216(i), 223(d) of the Act. [Tr., pp. 13-21]

Ratliff was forty-five years old at the time of his alleged onset date. He has a high school education and past relevant work experience as a millwright. [Tr., pp. 15, 20, 31] Ratliff alleges disability due to left knee pain. [Tr., pp. 201, 208] However, after initially applying for a period of disability and DIB, he also alleges disability due to a ruptured colon, hernia, colostomy, and the effects of two related emergency surgeries. [Tr., p. 8] After reviewing the record and considering the testimony presented during the administrative hearing, the ALJ concluded that Ratliff suffers from severe impairments of left knee degenerative joint disease, post-traumatic arthritis of his left little finger, obesity, hypertension, chronic obstructive pulmonary disease, and alcoholic liver cirrhosis. [Tr., pp. 15-16] Notwithstanding these impairments, ALJ Meade found that Ratliff retained the residual functional capacity ("RFC") to perform a reduced range of light work, requiring that he be able to alternate between sitting and standing at thirty minute intervals. The ALJ also concluded that Ratliff's RFC is subject to the additional following limitations:

> He can only occasionally operate foot controls with the left lower extremity. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He can never climb ladders, ropes, or scaffolds. He can frequently handle, finger, and feel with the non-dominant left upper extremity. He should avoid concentrated exposure to extreme cold; extreme heat; excessive vibration; irritants such as fumes, odors, dust, gases, and poorly ventilated areas; and hazards such as moving machinery and unprotected heights.

[Tr., pp. 17-18]

Based on the testimony presented during the administrative hearing, together with the medical evidence and consultative examiner's opinions, the ALJ found that Ratliff was unable to perform his past relevant work. [Tr., p. 20] However, based on the VE's testimony, and after considering Ratliff's age, education, work experience and RFC, the ALJ determined that Ratliff could perform other jobs that exist in the national economy. Specific examples of jobs at the light exertional level include a telephone interview worker, counter kiosk cashier and clerical worker and, at the sedentary level, jobs such as machine monitor, telephone order clerk, and clerical worker. [Tr., pp. 20-21] As a result of this determination, ALJ Meade concluded that Ratliff is not disabled.

## II.

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first

four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R.§ 404.1520(b). Second, the claimant must show that he suffers from a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether he can perform his past work. If he can, he is not disabled" 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the

correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

#### A.     Severe vs. Non-Severe Impairments

Ratliff argues that the ALJ erred at the second step of the sequential evaluation process by failing to consider and classify his abdominal hernia and related surgeries, colostomy, and issues of fatigue as severe impairments. [Record No. 10-1, pp. 10-11] He contends that the medical evidence demonstrates that he has significant, work-related limitations regarding his diet, medication and related fatigue, as well as his colostomy bag's possible odor and its sanitation. Ratliff asserts that the ALJ's failure to qualify these impairments as severe is a reversible error.

As an initial matter, it is the Claimant's burden to prove the severity of his impairments at the second step of the sequential evaluation process. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). The Commissioner maintains that Ratliff failed to meet this burden. A severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment "can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *see also* 20 C.F.R. §§ 404.1520(c), 404.1521. Additionally, the mere diagnosis of a condition does not thereby establish its severity. *Higgs*, 880 F.2d at 863; *see also Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. § 404.1545(a); SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184 at *2-3 (1996) (the functional limitations caused by a claimant's impairment are what establishes the severity of those impairments at step two, not the impairments themselves).

However, the Court does not need to decide whether ALJ Meade's failure to conclude that Ratliff's colostomy, his abdominal surgeries, fatigue, and abdominal hernia are severe impairments at step two of his analysis was erroneous. When an ALJ makes a finding that one or more of the claimant's impairments is severe, he "must consider limitations and restrictions imposed by all of [the] individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). As long as "an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'" *Fisk v. Astrue*, 253 F. App'x 580, 584 (6th Cir. 2007) (quoting *Maziarz v. Sec'y of Health & Human*

*Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)) (alteration in original); *see also McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (finding that because the ALJ found that the claimant had certain severe impairments and completed the evaluation process, it was "legally irrelevant" that the ALJ found other impairments to be not severe).

Here, the ALJ found that Ratliff had the severe impairments of: left knee degenerative joint disease; post-traumatic arthritis left little finger; obesity; hypertension; chronic obstructive pulmonary disease, and alcoholic liver cirrhosis. [Tr., pp. 15-16] ALJ Meade recognized that once any impairment is found to be severe, he must consider both severe and nonsevere impairments in the subsequent steps. [*Id.*, pp. 14, 15-16] Therefore, because the ALJ found that Ratliff has some severe impairments, he proceeded to complete the remaining steps of the analysis and it then became "legally irrelevant" that Ratliff's other impairments were not found to be severe. *McGlothin*, 299 F. App'x at 522. In short, ALJ Meade's failure to find that these conditions qualified as a severe impairment is not reversible error. *Maziarz*, 837 F.2d at 244; *see also Riepen v. Comm'r of Soc. Sec.*, 198 F. App'x 414, 415 (6th Cir. 2006) (even if the ALJ should have found the plaintiff's multiple sclerosis was also a severe impairment, the failure to do so "would not be a basis for reversal or remand because the ALJ considered all of [the plaintiff's] alleged limitations throughout the remaining steps of the evaluation process").

### B. Weight of Medical and Non-Medical Opinions

Next, Ratliff takes issue with the ALJ's assignment of the weight assigned to the opinions of: (i) Treating Physician Dr. Basil Georgi; (ii) non-examining, State Agency Physician Dr. Timothy Gregg; and (iii) non-medical, Single Decision Maker ("SDM") Chris Amburgey.

**1.      Dr. Basil Georgi**

Ratliff argues that the ALJ improperly credited the opinion of treating physician Dr. Basil Georgi with "little weight." [Record No. 10-1, pp. 9-10] Dr. Georgi of Southern Ohio Surgical Associates wrote a letter on February 29, 2012, assessing the claimant's impairments. [Tr., p. 437] Dr. Georgi stated that Mr. Ratliff required two major surgeries resulting in twice bowel resections with a colostomy and evacuation of abscesses. He further stated that, although Ratliff has healed from his surgeries, he has a ventral hernia in addition to a colostomy. Further, he does not believe Ratliff is a candidate for reversal due to concerns of his liver disease and the fear that placing the claimant under anesthesia could be fatal. Dr. Georgi concluded that Ratliff cannot perform his past relevant work as a millwright due to his ventral hernia, liver cirrhosis and ascites. Additionally, he stated that the Claimant is unable to lift anything over two pounds. [*Id.*] Dr. Georgi's letter indicates that Ratliff is scheduled for a follow-up appointment in six months; however, the record does not contain any evidence indicating the outcome of any follow-up appointment or if one ever occurred.

A treating source's medical opinion[1] will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's record. 20 C.F.R.

---

1       The regulations define "medical opinions" as statements from physicians or other acceptable medical sources that "reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical and mental restrictions." 20 C.F.R. § 404.1527(a)(2). Notwithstanding the deference to be given to the medical opinion of the treating physician, the ultimate decision on disability rests with the ALJ. *Walker v. Sec'y of H.H.S.*, 980 F.2d 1066, 1070 (6th Cir. 1992) Moreover, the regulations provide that a physician's opinion regarding whether a claimant is disabled or unable to work will be given no "special significance." 20 C.F.R. § 404.1527(d)(3).

§§ 404.1527(c)(2); *see also Walker v. Sec'y of H.H.S.*, 980 F.2d 1066, 1070 (6th Cir. 1992). If the treating source's opinion is not entitled to controlling weight, this does not necessarily mean that the opinion should be completely rejected. Rather, the ALJ must determine what weight to give the opinion by considering the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with regard to the record as a whole; (5) whether the treating source is a specialist in the area of his or her opinion; and (6) any other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6).

Additionally, the ALJ must always give "good reasons" for accepting or rejecting a medical opinion. 20 C.F.R. § 404.1527(c)(2). This is a "clear elaboration requirement imposed explicitly by the regulations." *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008). As Social Security Ruling ("SSR") 96-2p explains:

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5; *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Failure to abide by this requirement can result in the matter being remanded. *Id.* at 545 (citing *e.g., Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000), *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999), *see also Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we

encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.")).

As noted above, ALJ Meade afforded Dr. Georgi's opinion "little weight." [Tr., p. 19] He found that "[w]hile heavy work would be precluded by a ventral hernia, such significant limitation in lifting would not be reasonable." [*Id.*] He also concluded that a "colostomy is not itself significantly limiting on functions." [*Id.*] ALJ Meade continued that, "[o]verall, the treating physcian's opinion is not supported by objective findings and has been given little weight." [*Id.*] This brief justification for discounting Dr. Georgi's opinion fails to satisfy the "good reasons" standard of the Sixth Circuit. *See Wilson*, 378 F.3d at 544.

The Commissioner argues that the ALJ properly accorded Dr. Georgi's opinion little weight because it was conclusory and not supported by any objective findings. [Record No. 11, pp. 9-10] While it is true that an ALJ is not bound by conclusory statements of doctors, Dr. Georgi's conclusion concerning Ratliff's inability to lift anything over two pounds is based on the claimant's diagnosis of a ventral hernia, ascites, and liver cirrhosis. [Tr., p. 437] Likewise, the ALJ does not provide any reasoning beyond his conclusion that such a severe limitation of the claimant's ability to lift would be unreasonable. The ALJ neither acknowledges nor discusses the fact that Dr. Georgi was the surgeon who performed the two abdominal surgeries. More importantly, however, even if Dr. Georgi's opinion was properly discredited, the ALJ did not identify or discuss with any specificity the factors identified by 20 C.F.R. § 404.1527 or SSR 96-2p.[2] As a result, remand is required.

---

2 The Commissioner argues that Dr. Georgi's letter states that he had only known Ratliff for a period of six months and, therefore, the opinion cannot be relied upon to show that he experienced any limitations for a durational period of twelve months or longer. [Record No. 11, p. 11] However, there is no indication

## 2.	Dr. Timothy Gregg

Ratliff also argues that the ALJ committed reversible error by crediting the January 7, 2011 opinion of non-examining state agency physician Dr. Timothy Gregg with "great weight." Dr. Gregg concluded that Ratliff was able to perform light work. The ALJ determined that this assessment was "consistent with the overall record." [Tr., pp. 19, 58-62] However, Ratliff asserts that Dr. Gregg's opinion cannot be considered substantial evidence in support of the ALJ's unfavorable determination and that the ALJ erred by giving this opinion more weight than treating physician Dr. Georgi.

It is proper to consider the opinions of state agency medical consultants. *See* 20 C.F.R. § 404.1527(e). And because state agency consultants are considered experts in the Social Security disability programs, their opinions may be entitled to great weight if they are supported by the evidence of the record. *See* 20 C.F.R. § 416.1527(f)(2); SSR 96-6p, 1996 WL 374180 (July 2, 1996); *see also Hibbard v. Astrue*, 537 F. Supp. 2d 867 (E.D. Ky. 2008). Additionally, contrary to Ratliff's contention, it is not a *per se* error to ascribe more weight to a non-examining physician over an examining or treating physician. *See, e.g.*, *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x. 636, 642 (6th Cir. 2013) (observing that, in appropriate circumstances, opinions from state agency medical consultants may be entitled to greater weight than the opinions of treating or examining sources).

---

in the ALJ's written decision that the he weighed this consideration when evaluating Dr. Georgi's opinions.

The Commissioner also argues that Dr. Georgi's opinion is inconsistent with the opinions of Drs. Gregg and Beard concerning the claimant's ability to lift at the light exertional level. [*Id.*, p. 10] However, the ALJ does not explain these discrepancies in his written decision. Further, as noted above, he failed to give good reasons for his decision to provide little weight to Dr. Georgi's opinion. And, as explained below, the ALJ impermissibly relied on Dr. Gregg's opinion without further justification.

In fact, Social Security Ruling 96-6p provides that "[i]n appropriate circumstances, opinions [of non-examining physicians] may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, 1996 WL 374180 (July 2, 1996). One such instance is where the "State agency medical . . . consultant's opinion is based on a review of a *complete case record* that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.* (emphasis added). Additionally, as the Sixth Circuit recently reiterated:

> When an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence, especially when that evidence reflects ongoing treatment, we generally require some indication that the ALJ at least considered these new facts before giving greater weight to an opinion that is not based on a review of a complete case record.

*Brooks*, 531 F. App'x. at 642.

Here, non-examining source Dr. Gregg did not have the opportunity to review the entire medical record. Dr. Gregg issued his January 7, 2011 assessment more than eight months before the claimant's first surgery related to ailments concerning his colon, hernia and colostomy, and over ten months before his second surgery on October 11, 2011. Dr. Gregg was also without the benefit of multiple examining and treating source opinions, including Dr. Ira Potter, Dr. Thomas Khoury, examining physician Dr. Bruce Guberman, treating physician Dr. Georgi, as well as attendant clinical notes and records. This is a significant portion of Ratliff's medical history which also constituted on-going medical treatment. Additionally, many of these opinions support Dr. Georgi's more limited assessment of the claimant's physical limitations. Thus, ALJ Meade's determination to accord greater weight to Dr. Gregg's assessment was erroneous

without more of an explanation concerning the underlying reasoning for his decision and in light of Dr. Gregg's inability to review the claimant's entire medical record. *See, e.g.*, *Blakley v. Comm'r of Soc.* Sec., 581 F.3d 399, 409 (6th Cir. 2009); *Perrine v. Colvin*, No. 5:13-cv-1086, 2014 U.S. Dist. LEXIS 25228, at *18-20 (N.D. Ohio Feb. 27, 2014) ("In light of the fact that [the non-examining physician] did not have access to records documenting significant ongoing surgical treatment or to the opinions of treating and examining physicians, her opinion does not constitute substantial evidence."); *Kuntz v. Comm'r of Soc. Sec.*, No. 5:10 CV 768, 2011 U.S. Dist. LEXIS 131214, at *15 (N.D. Ohio 2011) (remand necessary where the ALJ elected to credit non-treating source opinion that did not consider significant part of the medical record over treating source opinion that did consider the full record and the ALJ did not directly addressing why he chose to give weight to opinion that did not consider full record); *Driver v. Astrue*, No. 1:07-CV-3014, 2009 U.S. Dist. LEXIS 18053, at *61-63 (N.D. Ga. Mar. 9, 2009) (reliance and acceptance of non-examining physician assessment improper where report was, "at most, based on a review of only some of the medical evidence, but more significantly, it predated and [was] inconsistent with records which were not reviewed by the non-examining consultant" and failed to take into account continued complaints of the ailment).

In response, the Commissioner contends the ALJ did not err by according more weight to Dr. Gregg's opinion because Dr. Gregg's opinion is consistent with the opinion of consultative examining physician Dr. Kip Beard. [Record No. 11, pp. 10-11] She argues that Dr. Gregg's opinion, therefore, provides substantial evidence in support of the ALJ's determination. This argument, however, falls short.

On October 12, 2010, Ratliff was examined by Dr. Beard. [Tr., pp. 291-96] Ratliff's chief complaint at the time of Dr. Beard's examination was left knee pain. [Tr., p. 291] Dr. Beard concluded that the objective findings support limitations of: (i) prolonged standing, walking, especially on hills, inclines, steps; (ii) climbing ladders, climbing up and down from equipment or in and out of vehicles; and (iii) squatting, kneeling, or crawling and heavy lifting and carrying. [Tr., pp. 291-96] ALJ Meade afforded Dr. Beard's opinion "considerable weight." [Tr., p. 19]

While Dr. Beard's opinion is mostly consistent with Dr. Gregg's conclusions, the ALJ fails to recognize that Dr. Beard's opinion actually predates Dr. Gregg's opinion. And while the ALJ may rely on the opinions of consultative examining physicians, this does not cure the deficiencies with the weight afforded to non-examining physician Dr. Gregg's assessment. *See Jericol Mining, Inc. v. Napier*, 301 F.3d 703, 710 (6th Cir. 2002) ("The same factors that justify placing greater weight on the opinions of a treating physician are appropriate considerations in determining weight to be given an examining physician's views."). As a result, the errors concerning the level of reliance on Dr. Gregg's opinions are not harmless.[3]

### 3. SDM Chris Amburgey

Finally, Ratliff argues that the ALJ erred in giving "great weight" to the opinion of SDM Amburgey. After reviewing the record, SDM Amburgey concluded that Ratliff could perform a range of light work. [Tr., pp. 44-53] The claimant argues that Amburgey, as a SDM, is not an acceptable medical source and that ALJ Meade erred in giving great weight to a decision

---

3   The plaintiff does not contest the weight assessed to the opinion of Dr. Beard in his motion for summary judgment. [Record No. 10] Therefore, the Court declines to address the validity of the ALJ's reliance on Dr. Beard's assessment.

maker who is neither qualified or an acceptable medical source under 20 C.F.R. § 404.1513(a). [Record No. 10-1, p. 8] Although the Commissioner correctly concedes that ALJ Meade erroneously referred to Amburgey as a medical consultant and afforded his opinion great weight, she argues that this error is harmless and does not require remand. [Record No. 11, pp. 6-7]

SDMs are not qualified to provide medical evidence of a claimant's impairment and are not acceptable non-medical sources. *See* 20 C.F.R. §§ 404.1513(a)-(c); 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources."); *Maynard v. Astrue*, No. 11-12221, 2012 U.S. Dist. LEXIS 160848, at *15-16 (E.D. Mich. Nov. 9, 2012). As a result, an SDM's assessment is entitled to no weight. For instance, in *Dewey v. Astrue*, 509 F.3d 447 (8th Cir. 2007), the Eighth Circuit held that remand was required where the ALJ relied on a non-physician's functional limitations, mistakenly believing that the examiner was a physician. The court concluded that the error was not harmless because, if the ALJ known that the assessment was not from a physician or other qualified medical source, he may have reached a different conclusion. *Id.* at 449-50.

In certain circumstances, an ALJ's mischaracterization of an opinion by a SDM as a decision of a state agency medical consultant does not require remand. *See White v. Comm'r of Soc. Sec.*, No. 12-cv-12833, 2013 U.S. Dist. LEXIS 114584, at *22-24 ( E.D. Mich. Aug. 14, 2013) ("[C]ourts have routinely found that such a mis-characterization of the opinion of a lay person as the assessment of a physician is harmless where substantial evidence in the record supported the decision of the ALJ."); *Adams v. Astrue*, No. 2011 U.S. Dist. LEXIS 66189, 18 (E.D. Ky. June 21, 2011) (ALJ's citation to SDM's opinion not in error where the plaintiff fails to provide evidence that the ALJ relied primarily on the SDM's RFC assessment or that

suggested that the ALJ thought that the SDM was a physician); *Stone v. Astrue*, No. CA 11-00517-C, 2012 U.S. Dist. LEXIS 112621, at *6 (S.D. Ala. Aug. 10, 2012) ("[T]he Court agrees with the Commissioner in principle. If the ALJ's RFC is *otherwise supported by substantial evidence*, any reliance on a source entitled to no weight may be harmless error, and, if so, the Court will affirm the Commissioner's decision.") (emphasis in original); *Northern v. Astrue*, No. 10-2-DLB, 2011 U.S. Dist. LEXIS 17387, at *12-14 (E.D. Ky. Feb. 22, 2011); *Moody v. Astrue*, No. 1:12cv33, 2013 U.S. Dist. LEXIS 17437, at *8-9 (W.D.N.C. Jan. 10, 2013); *Jones v. Astrue*, No. 1:07-cv-0698-DFH-WTL, 2008 WL 1766964, at *10 (S.D. Ind. Apr. 14, 2008). However, such a conclusion is not appropriate under the facts of this case.

Here, ALJ Meade expressly referred to SDM Amburgey as a "state *medical* consultant" and provided his opinion "great weight." Additionally, although SDM Amburgey's assessment was affirmed and adopted by the second state agency consultant and physician, Dr. Timothy Gregg, the claimant has sufficiently identified other evidence which suggests that the ALJ could have reached a different conclusion had he known SDM Amburgey was not a physician. *Cf. Northern*, 2013 U.S. Dist. LEXIS 17387, at *13. [Tr., pp. 58-62] Finally, as outlined above, because ALJ Meade failed to properly assess Drs. Georgi and Gregg's opinions, whether substantial evidence supports the ALJ's final determination is in question. As a result, ALJ's reliance on SDM Amburgey's assessment is not harmless.

### C. Contact Treating Physician & Refer to Consultative Exam

Ratliff cursorily argues that the ALJ erred by not ordering him to undergo a consultative examination or by contacting his Treating Physician Dr. Georgi and that this was a reversible error. [Record No. 10-1, p. 10] How this constitutes error is not articulated in the claimant's

motion and the perfunctory nature of his contention results in waiver of his argument. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). Notwithstanding the claimant's failure to properly raise this issue, his argument is without merit.

Under the regulations, an ALJ must recontact a treating physician to obtain more information if there is insufficient evidence to make a disability determination.[4] It is the inadequacy of the record which triggers the recontacting regulation, not the rejection of the treating physician's opinion. *See McNelis v. Comm'r of Soc. Sec.*, No. 08-12529, 2009 U.S. Dist. LEXIS 89782, at *26 (E.D. Mich. Sept. 29, 2009); *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Additionally, the regulations provide an ALJ the authority to order a consultative examination if a claimant's medical sources are unable to proffer sufficient information about a claimant's impairments to enable the ALJ to determine whether the claimant is disabled. 20 C.F.R. § 404.1517. However, the regulations do not require an ALJ to refer a claimant to a consultative examination. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources

---

4      On March 26, 2012, the regulations governing an ALJ's duty to recontact a medical source changed. 20 C.F.R. § 404.1520b replaced 20 C.F.R. § 404.1527(c) and a portion of SSR 96-5p. Under the new regulations, recontacting a treating medical source is not required, but is now permissible and within the ALJ's discretion. 20 C.F.R. § 404.1520b (when faced with insufficient evidence to determine disability, an ALJ "may recontact [a] treating physician, psychologist, or other medical source").

The Commissioner argues that, because these regulatory changes are procedural, the new regulations will apply on remand. Therefore, finding an error in the application of the old recontacting regulations would be an "'idle and useless formaility.'" [Record No. 11, p. 12 (quoting *NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n. 6 (1969))] However, even under the old regulations recontacting Dr. Georgi would not be required. Therefore, the Court need not address the Commissioner's contention that the new regulations should apply to this matter. *Cf. Toland v. Colvin*, No. 02:12-cv-1663, 2013 U.S. Dist. LEXIS 166756, at *19 (W.D. Pa. Nov. 25, 2013) (examining the claimant's recontacting argument under the regulations "applicable at the time when [the claimant's] claim was adjudicated")

do not contain sufficient evidence to make a determination."); *Holladay v. Bowen*, 848 F.2d 1206, 1207 (11th Cir. 1988).

ALJ Meade was provided adequate evidence from which to reach a conclusion regarding Ratliff's alleged disabilities. More specifically, he was presented with evidence from the claimant's treating, examining, and non-examining physicians, as well as the claimant's own testimony. Additionally, the ALJ concluded that "[Dr. Georgi's] opinion [was] not supported by objective findings" and was not reasonable. He found Drs. Gregg and Beard's opinions to be a more reliable assessment of Ratliff's alleged disabilities and provided their opinions greater weight. *See DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 416 (6th Cir. 2006) ("A disagreement between two medical professionals does not render the opinion of one 'inadequate' under the regulations."). ALJ Meade did not conclude Dr. Georgi's report was inadequate to make a determination regarding Ratliff's disability; rather, he disagreed with the report's conclusion.

And, "[w]hile such an examination might have been helpful here, it was not *necessary*." *Robinson v. Sullivan*, 887 F.2d 1087, No. 89-3110, 1989 U.S. App. LEXIS 15671, at *2 (6th Cir. 1989) (emphasis in original). ALJ Meade reached his conclusions based on perceived inconsistencies, not an inadequate record. Thus, he was not required to recontact Dr. Georgi and it was not an abuse of discretion to not refer Ratliff to an additional consultative examination.[5] In short, ALJ Meade did not err in this regard.

---

5    Ratliff was previously sent on a consultative examination with Dr. Beard. [Tr., p. 291]

**IV.**

The ALJ did not err in concluding that certain of Ratliff's alleged impairments were not severe. Likewise, he was not required to recontact Dr. Georgi or send the Claimant to a consultative examination. However, because the ALJ failed to properly evaluate the opinions of Dr. Georgi, Dr. Gregg, and SDM Amburgey, substantial evidence does not support the ALJ's determination. Accordingly, it is hereby

**ORDERED** as follows:

1. Plaintiff Donald Chandos Ratliff's Motion for Summary Judgment [Record No. 10] is **GRANTED,** in part, to the extent that he seeks a remand for further administrative proceedings. To the extent he seeks an award of benefits at this stage of the proceedings, his motion is **DENIED**.

2. Defendant Carolyn W. Colvin's Motion for Summary Judgment [Record No. 11] is **DENIED**.

3. The administrative decision of Administrative Law Judge Jerry Meade is **REVERSED** and the matter is **REMANDED** for further administrative proceedings consistent with this opinion and pursuant to sentence four of 42 U.S.C. § 405(g).

This 1st day of August, 2014.

